Next case on the call is 5-13-0057. P. Morris Peacock. Counselor, are you ready to proceed? May it please the court. My name is Amanda Corner from the Office of the State Appellate Defender, and today I'm representing Mr. Rajat Peacock. Your Honors, Mr. Peacock was convicted of delivery of cocaine within 1,000 feet of a church. At this time, Mr. Peacock is not disputing that he was guilty of delivery. However, he is asserting that the state failed to prove that it occurred within 1,000 feet of a church. Therefore, Mr. Peacock is asking for a limited remand at this point for new sentencing and for this court to vacate the portion of the conviction that has to do with 1,000 feet of the church, the aggravating factor. Are you contesting both that it was a church and active as a church? We are contesting that this building was an active church on the date of the offense. You're conceding basically that it's a church by virtue of its name? I am saying that there are some case law that contests such as Salvation Army Church or things like that. Whether this building – I'm not suggesting that the Apostolic Church of God does not by itself suggest that at some point this building might have been a church. But the point is that it must be a church on the date of the offense. And here the state simply failed to prove that on the date of the offense that this building was operating as a church. In other words, if somebody would go down the street and say, there is a church, that doesn't mean it's operating. Is that a definition of a church that they must have some sort of religious thing going on at the time? When is it a church and when is it not a church? That is, in operation or not operation? I didn't know that. According to Peeble v. Ortiz, the church has to be – this building needs to be operating as a church. Now, there are a lot of definitions as to what operating as a church might mean. So what's the statute say? Within some feet of an operating church? Primarily as a church. Now, what's it say? What's the statute exactly say? The statute says that the defendant knowingly delivered a substance containing cocaine and that the delivery took place within 1,000 feet of a church. No, I mean the statute, which says it's illegal to do something. Doesn't it say within 1,000 feet of a church or some bubble bar? A church, a school. But it doesn't say a church that as of today is a church and there's parishioners there? I don't know. No. What – it does not provide an exact definition. It just says a church. It just says a church. So did he violate that? Your Honor, it's not clear from the record, and the State had the burden of proving that it was a church. Didn't the defendant or somebody testify that he measured and it was a church? Actually, the exact language, and this is the only testimony presented regarding a church, was by Officer Roundtree, and the State asked him the following question. Now, did you have the chance later on during this investigation to do some measurements here in Harrisburg? He said, yes, I did. And then he goes on to say that it was within 1,000 feet of a church. Now, we know that this measurement took place more than a year after the date of the offense. Perhaps that sign wasn't on the building, you know, at the time. Perhaps there was no one using that building as a church. Perhaps that building had been used as a church 50 years ago, but on the date of the offense it was no longer being used as a church. Now, at least part of the purpose of knowing that this was a church on the day is because if this is merely a building, it doesn't have the same sort of heightened awareness, need to protect those inside that are engaging in religious activity, just like a school, there's students inside. If there's simply an abandoned building that once was a school, there is no heightened need to protect that building anymore. Similarly, if it was a building and later became a school or a church, there's no need to protect it as heightened on the date of the offense if it wasn't being operated in whatever manner, if that were a church or a school. We've decided that when these activities are going on, there's a heightened need to protect. Now, people versus Ortiz and the other appellate court cases that have since followed Ortiz have found that this is an easy burden for the state to meet. All the state has to do is to call in a pastor or a church member, anyone with personal knowledge that this was a church on the day of the offense. But Sims, which is the most recent one I could find, looks more to the indicia that the officer might have with respect to his time in the community, his familiarity with the neighborhood, his training, and that type of thing. Of course. And wasn't there some similar information by Roundtree? No, there wasn't. The difference, the primary difference between Sims and Ortiz and all these other cases is that Sims allowed the jury to draw an inference from the officer's personal knowledge. Now, in Sims, this police officer had been on the force in Bloomington. Again, it was a state police force, right, so it's much smaller. He'd been on the police force for 10 years. He'd been a patrol officer for five. And he testified not only was it an active church, but it had been a church for as long as he could remember. In other words, he had this personal knowledge. And in Sims, the court said that was enough. The jury could have drawn that inference. Here, the only person to testify is Officer Roundtree. He's not a local police officer. What did he say? He said, and, again, he was asked, now, do you have the chance later on during this investigation to do some measurements? He said, yes, I did. And then the next time he mentions the church, he said, and can you tell me about the purpose? Let me back up. Where did you measure from? I measured from the corner of Mr. Peacock's residence, the actual corner of the building, to the Apostolic Church of God, which is located to the southeast of his residence. So then during the whole trial, that's the only time that was mentioned? There was one other moment later on. And on this particular day, this is the state, when you made this measurement, can you tell us what the distance is from Mr. Peacock's property to the Apostolic Church of God? And Officer Roundtree says, yes, from the corner of the building to the Church of God to the corner of Mr. Peacock's residence. He never again mentions the church, and there is no other testimony. And that's just that one witness. They only had one witness in this case? Well, there were other witnesses related to the delivery charges. That's what the minister did. The confidential informant never mentioned the church. The confidential informant only testified about going to Mr. Peacock's residence and purchasing drugs. She never mentioned that this had anything to do with the church. So nobody ever mentioned, except in this case, one person mentioned a church? Yes. Yes. Officer Roundtree was the only witness who mentioned the church at all. So there's no church mentioned anyplace else in the evidence? No. And the testimony that I just read to you is the entirety that involved the church. There is some discussion regarding the measurements, how the measurements were taken, but those are the only times in the entire trial the church itself is mentioned. And that's a year later? And that was a year later. The jury also understood that Officer Roundtree was a state police officer in charge of drug investigations south of Effingham. He was assigned to the southern Illinois district. So that, as you all know, encompasses a lot of different counties. He was not a local patrol officer. He had no knowledge, at least, that he testified to, or the jury would have been aware of, of this neighborhood or what this church would, you know, whether this apostolic church of God was a church at all. Further, there were... You're kind of blending two different concepts because I thought it was pretty clear that it has church in the title, that it's reasonable to infer that it was, in fact, a place of worship. But the question is rather whether or not it was operating primarily as a church at the time of the offense. Let me rephrase. First, Officer Roundtree had no idea whether this building was labeled as the apostolic church of God on the date of the offense. He took the measurements a year later. Who knows whether that building was labeled as such on the date of the offense? The second point that I would make is that simply because it's labeled does not mean it's active. For example, you can have a church that was once an active church 50 years ago. It's an abandoned building. No one has taken down a sign. So Roundtree didn't testify to the fact that when he arrested him that he knew that he was within 1,000 feet of the particular church in question? No, he did not. And it's particularly interesting in this case because Roundtree never intended to go to Mr. Peacock's residence, or at least that's a fair reading of the record, on the day in question. In fact, they wanted to buy drugs from another individual who was unavailable. And as a result, they sort of put together really quickly Mr. Peacock and went to his house instead. So there's no evidence in the record that Officer Roundtree would have even investigated the area or have been aware of it on the date of the question. There's also no evidence in the record for assuming that Officer Roundtree was familiar with Harrisburg at all or the neighboring communities. Again, he was assigned to the entire southern district of Illinois. Was this raised at trial as an objection to his lack of foundation? It was not, Your Honor, but this is a question of reasonable doubt, which can be raised at any time. The state bears the burden to meet the sufficiency of the evidence. And here there was insufficient evidence to prove that this occurred within 1,000 feet of a church. Now, because Mr. Peacock's not contesting the delivery, this would be a limited remand, a vacating of just the aggravated portion within 1,000 feet of a church, and a limited remand to be re-sentenced on delivery alone without the aggravating factor. Thank you, Counselor. Thank you. Thank you. Good afternoon. May it please the court. Defense Counsel. I'm going to have to speak way up here. It's being recorded, so you'll have to speak. May it please the court. We have to hear as well. Thank you. The state maintains that the evidence proved beyond a reasonable doubt that the defendant committed the crime of unlawful delivery of a controlled substance within 1,000 feet beyond a reasonable doubt. On appeal, the question is whether any rational trial fact could have found the essential elements of the crime beyond a reasonable doubt, viewing the evidence and the like most favorable to the prosecution. In accordance with this standard, a reviewing court may draw any inference in the prosecution's favor if it would be reasonably defensible to draw that inference from the evidence presented at trial. The state maintains that Inspector Roundtree's testimony sufficiently established that the defendant had delivered a controlled substance within 1,000 feet of a church. Okay. Stop there. I think we've all established that it was a church at some time and has the nomenclature in it. How did he show that it was primarily operating as a church at the time of the offense? I would point to the case of People v. Sims. And in that case, the Fourth District Court stated that if there's no foundational objection where the officer is testifying to a building being a church, then that testimony can be considered to have probative value. Then the question becomes whether an inference can be made that the officer's testimony establishes that the building was operating as a church. And I have Sims right in front of me, and I've read it, and I agree with you that they pretty much went back to Foster, which was an earlier case that said if it has the name church in it or synagogue, therefore you can infer it. But it then goes on to list a number of indicia that established through witness testimony that it was operational as a church at the time of the offense. And I think what the defense is saying is that none of that was established here. Your Honor, the state believes that in Inspector Roundtree's testimony, when he was testifying, that there were factors that could be inferred that he would know from that testimony. Okay, then tell us what those are. First of all, he testified that he was familiar, in his line of work, he would be familiar with Harrisburg because he had worked six years with the state police, two years with the task force. He worked on federal and state drug cases in the Southern District, south of Effingham. Also, he was familiar with- Are these facts about his background, or did he actually testify to these facts? He was testifying that he worked six years with the state police, and then two years with the task force. Then he started to testify regarding that he had worked federal and state cases in the Southern District. He also testified that he was working, that the defendant was a person of interest. He further testified that they were doing a, had a confidential source, Julie Shots, that they were doing a controlled drug buy. During that time, the person that was supposed to come in and come to Harrisburg at the time, so Julie Shots was asked, was requested to make the drug purchase. At his home, which was kind of a change of venue, correct? Correct, but Inspector Roundtree was the person that ended up, after she was fitted with the equipment, he drove her over to the defendant's home. Actually, he dropped her off, and he testifies to this, at the American Legion, at a parking lot. And then she exits the car and walks to the defendant's residence. Also, he testifies that the nature of his work, that he would be out in the community. He did control drug buy surveillance. So, in light of that, he would have some knowledge. It could be implied that he would have knowledge. But this building was operated as a church on the day of the defense. And one of the factors that the sim court points to is the person having some personal knowledge, whether they are active, whether they lived in the neighborhood, whether they patrolled the neighborhood, what would allow them to have some knowledge about the neighborhood. And actually, those things that you just stated, he didn't fit any of those, did he? He didn't live in the neighborhood. No, he did not. He wasn't active in the neighborhood. He worked in the neighborhood. He worked in the southern district. That's a huge area. He also said that he worked in the county, which Harrisburg is in the same county. But the facts show that he was familiar with Harrisburg because he was able to, he knew where the defendant lived. He said that he was a person of interest. He actually drove the confidential source to the location so that she could make the control drug buy. He knew about the American Legion. I think it's reasonable to infer that he knew the buildings in the neighborhood and what they were used for. And then when you look at his testimony as concerning when he uses the church word, he on his own states that it's the apostolic church of God, whereas in other cases, leading questions were asked. And he stated that he measured from the Pecos residence to the actual corner of the apostolic church of God. He also refers again to the church. So under Sims, it's reasonable to infer that because of his knowledge of the area, that he would know, working in the area, that he would know that apostolic church was operating at a church at that time. And I would also note that in the Sims case, when the court was discussing the case of Foster, the court stated that Foster holds that nomenclature is enough. But that's relating back to the church, whether or not it's a church. And I think everybody's conceded that it was a church. Correct. But Sims, the majority of Sims deals with whether or not it's operational at the time. That's true. But the court goes on to comment about Foster that all a police officer has to do is refer to the building by a proper name with the term church in it, New Hope Church, for example. And that proves beyond a reasonable doubt that the building was used primarily for religious worship on the day of the offense. That's a comment that's made by Sims court in regards to Foster. What page is that? That would be paragraph 107. Page. Under Section C, the primary use of 411 East Montgomery Street. But the Sims court didn't agree with that. They agreed that the nomenclature was enough, but not just that Foster may have held that the inference then was enough to show that it was. But they didn't. Sims doesn't agree with that. Sims, when my point on that was that Sims had found that nomenclature was enough to establish it was a church used primarily for religious reasons on the day of the offense. And that's the way that the Sims court had interpreted Foster. But it's true that Sims also said where there's no foundational objection to the officer using the word church, that there needs to be additional evidence that's presented where the officer shows that he has personal knowledge to be able to testify that would allow an inference that the building operated primarily for religious services on the day of the offense. The state would ask that this court affirm the defendant's conviction on the case. Thank you, counsel. Your mother? Your honors. When we look at the Sims case, the primary point of the Sims case is that an officer can have personal knowledge. And Mr. Peacock's not disputing that. And even if we assume that Officer Roundtree had personal knowledge, it's still not enough because he did not testify to that in front of the jury. In the Sims case, it wasn't a question of dates. The Sims case wasn't worried about timing. The officer said for as long as he could remember and had been an officer for at least 10 years, that building had been used as a church. Here, the best the jury could draw from this was that later on, more than a year later, Officer Roundtree or Investigator Roundtree could say that this building was being used as a church. Never did Investigator Roundtree state that on the date of the offense, this building was being used as a church. Never did he mention that he saw this church, that he had any personal knowledge that on June 3rd, 2008, this building was being used as a church. And in Sims, the jury could have certainly drawn that inference because for 5, 10 years, the police officer stated, look, I knew this was a church. I worked this beat. I understand this neighborhood. This was a church. And Mr. Roundtree never stated that to the jury. And the jury can only draw inferences from information it has before it, from the evidence. And the evidence in this case is that more than one year later, Investigator Roundtree testified that this building was in fact a church. That is the extent of the knowledge that he had, and that is the extent of the evidence before the jury. It was impossible for the jury to make an inference from that single statement that more than a year prior, this building had been used as a church. Roundtree himself doesn't make that assertion, and the jury can't possibly draw an inference from that. Further, while Officer Roundtree may in fact have some familiarity with Saline County, it's unclear from the record just how much, he also testified he was in every county south of Effingham. That's a number of counties, a number of communities. Who knows how many churches are possibly contained within the borders of the counties south of Effingham. And Roundtree offered no explanation that he knew Harrisburg well enough to identify the churches, or that he had sufficient personal knowledge to determine that this building was actually being used as a church. As we noted earlier, a building can be labeled, and it can be an abandoned building from some time ago. There had to be some personal knowledge that on June 3rd, 2008, Officer Roundtree had knowledge that this building was being used as the Apostolic Church of God. And finally, the state makes the point that he knew the name of the church by himself without being asked. Well, of course he did. He went there, and with a measuring stick, measured from Mr. Peacock's residence to this building. He stood in front of the building and made that measurement. So maybe a year later, he was familiar enough to know the name of the church. That is certainly not evidence that was before the jury upon which they could have made an inference. Therefore, Mr. Peacock respectfully requests that this court vacate the aggravating portion of the delivery charge and provide a limited remand for resentencing on delivery.  Thank you, Counsel.